TERRI F. LOVE, Judge.
| ^his appeal arises from the district court’s denial of the defendant’s objections to the state’s use of peremptory challenges. We find that the district court did not err and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Bryant Brastfield (“Mr. Brastfield”) was charged with possession of cocaine. His first trial ended in a mistrial because the jury was unable to reach a verdict. While empaneling a second jury, the state used peremptory challenges to strike five African-American jurors. Mr. Brastfield objected, stating that the state was attempting to create an all white jury. The state presented allegedly race-neutral reasons for the use of the peremptory challenges. The second jury found him guilty as charged. Mr. Brastfield was sentenced to serve five years at hard labor. The district court granted his motion for appeal and the motion to reconsider his sentence was denied.

ERRORS PATENT

A review of the record reveals no errors patent.

BATSON CHALLENGE

Mr. Brastfield asserts that the district court erred in denying objections to the |.¿state’s use of peremptory challenges that resulted in the exclusion of all African-American venire members in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
Prior to trial, Mr. Brastfield contended that the state had intentionally utilized its peremptory challenges to preclude African Americans from serving as jurors and had impermissibly obtained an all white jury. After listening to the state’s reasons for using its peremptory challenges, the trial court disagreed.
Under Batson, a defendant objecting to a peremptory challenge must first establish a prima facie case of discrimination by showing facts and relevant circumstances which raise an inference that the prosecutor used the challenges to exclude potential jurors because of race. 476 U.S. at 96, 106 S.Ct. 1712. The burden then shifts to the prosecutor to provide a race-neutral explanation for the challenges. Batson, 476 U.S. at 97, 106 S.Ct. 1712. The explanation need not be persuasive, or even plausible, and “[u]nless a discriminatory intent is inherent in the prosecutor’s explanation, the reason offered may be deemed race-neutral.” Purkett v. Elem, 514 U.S. 765, 768, 115 *11 S.Ct. 1769, 131 L.Ed.2d 834 (1995), quoting Hernandez v. Neto York, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The trial court then must decide whether the defendant has proved purposeful racial discrimination. State v. Collier, 553 So.2d 815, 818 (La.1989). The ultimate burden of persuasion remains on the defendant to prove purposeful discrimination. Id.; Hernandez, 500 U.S. at 359, 111 S.Ct. 1859.
“The proper inquiry in the final stage of the Batson analysis is whether the defendant’s proof, when weighed against the prosecutor’s proffered race-neutral reasons, is sufficient to persuade the trial court that such discriminatory intent is present.” State v. Hobley, 98-2460, pp. 19-20 (La.12/15/99), 752 So.2d 771, 783. The trial judge’s determination of purposeful discrimination rests largely on credibility evaluations, and these findings are entitled to great deference by the previewing court. Batson, 476 U.S. at 99 n. 21, 106 S.Ct. 1712.
Mr. Brastfield made the Batson objection and the state proffered race-neutral reasons for its peremptory challenges. Once this was done, the issue of a prima facie case of discrimination became moot. See State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 288 citing Hernandez, 500 U.S. at 359, 111 S.Ct. 1859. As such, the issue becomes whether the appellant’s proof, when weighed against the prosecutor’s proffered race-neutral reasons, is sufficient to persuade the trial court that such discriminatory intent was present. Green, 94-0887, 655 So.2d at 290.
The prosecutor in this case dismissed five African-American jurors. Jurors 2 and 11 were dismissed because they rendered a not guilty verdict in another case.[1] The prosecutor excused these jurors out of a belief that they would be somehow biased against the prosecution, and this justification is plausible. The same is true regarding the state’s dismissal of Juror 9. Juror 9 was picked for a jury by the same prosecutor in a separate case the week before Mr. Brastfield’s trial, where a mistrial was declared. The prosecutor specifically stated that Juror 9 was dismissed out of concern for any confusion and bias. Lastly, Jurors 7 and 12 were dismissed because they had never served on a jury. The state also noted that Juror 12 appeared disinterested. “Because the trial record cannot indicate the interest level of the venire members during voir dire, this Court should defer to the trial court’s determination of whether this reason was legitimate and related to the particulars of the case.” State v. Knighten, 609 So.2d 950, 955 (La.App. 4 Cir.1992).
The only facts or circumstances supporting an inference that the state |4exercised its strikes in a racially discriminatory manner offered by Mr. Brastfield is that Juror 17, who is white, also indicated that he had never served on a jury, yet was selected as a juror for this case. Mr. Brastfield also noted that two jurors, who were not challenged by the state, numbers 14 and 18, had only civil jury experience.[2] In response, the prosecutor noted that Juror 17 was an attorney and that he never dismissed an attorney. Regarding Jurors 14 and 18, the state maintained that it sought people who had previously served on a jury.
Mr. Brastfield relies upon Snyder v. Louisiana, — U.S.-, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), in which the state dismissed a juror, Mr. Brooks, because it felt that he would be overly concerned with being absent from his student teach *12 ing assignment and that he might have been motivated to find the defendant guilty of a lesser included offense to obviate the need for a penalty phase. The court found the state’s reasons implausible, noting that Mr. Brooks was one of more than fifty venire members expressing concern that jury service would unduly interfere with their lives, some even more than Mr. Brooks, and those jurors were not dismissed by the state. More importantly, the state dismissed him despite the fact that court personnel contacted the university and had obtained reassurances that it would work with Mr. Brooks so that he could complete his student teaching assignment satisfactorily.[3]
Snyder is clearly distinguishable from the case sub judice because the state uniformly dismissed jurors because they either never served on a jury or rendered a not guilty verdict. The one exception is Juror 17, who was not dismissed because | she was an attorney.
As the party alleging that he has been the victim of intentional discrimination, Mr. Brastfield carried the ultimate burden of persuasion. In this case, Mr. Brast-field’s proof, when weighed against the prosecutor’s proffered race-neutral reasons for exercising the challenges, was not sufficient to prove the existence of discriminatory intent. Therefore, the district court did not abuse its discretion in finding that the prosecutor did not strike these jurors because of their race.

DECREE

For the above mentioned reasons, we affirm the conviction and sentence. find that the district court did not err and
AFFIRMED.
BELSOME, J., concurs with reasons.

. Juror 11 also rendered a guilty verdict in another case.

. Juror 14 was challenged by the defense; juror 18 served.

. Court personnel learned the information on Tuesday, and the state dismissed Mr. Brooks on Wednesday. Notably, after learning that his jury service would not interfere with his student teaching assignment, Mr. Brooks no longer expressed concern.